**Edwin Lamb HOOPER, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD, Respondent.**

No. 87–1257.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1988.

Decided March 18, 1988.

George Hugh Savord, Anaheim, Cal., for petitioner.

Karen R. Bury, Atty., F.A.A., with whom Peter J. Lynch, Manager, Enforcement Proceedings Branch, F.A.A., Washington, D.C., was on the brief, for respondent.

Before MIKVA, STARR and SILBERMAN, Circuit Judges.

PER CURIAM.

We are asked to decide whether an agency's dismissal of a matter in which a brief was filed late is arbitrary and capricious. Because the agency has from time to time and without explanation deviated from its enunciated policy, applied here, we hold its action arbitrary and capricious.

On February 6, 1986, the Administrator of the Federal Aviation Administration issued an order suspending the private pilot certificate of Edwin Lamb Hooper for violations of 14 C.F.R. §§ 91.85(b), 91.87(b), and 91.9 (1987). Hooper was alleged to have operated a Cessna 182B in the Van Nuys Airport Traffic Area without air traffic control authorization and to have caused a near collision in midair. Hooper appealed the order to the National Transportation Safety Board ("NTSB"), where an Administrative Law Judge affirmed the order of suspension. The ALJ's decision bore the legend "SERVED: November 3, 1986," and at the end, the ALJ set forth appeal rights:

*Appeal*

An appeal from the decision and order herein may be made by filing with the Board, ... and serving before the other party a notice of appeal within 10 days from date of service hereof, perfected by the filing of brief in support thereof within 30 days from said service date.

The procedure on appeal is set forth in detail in Rules 47 and 48 of the Rules of Practice.

Hooper filed a timely notice of appeal on November 10, 1986, but did not file his brief until December 8, 1986. The FAA moved to dismiss, contending the brief was filed five days too late. Hooper responded that the ALJ's statement of appeal rights could fairly be read as calculating the thirty days from service of the notice of appeal, not from service of the decision and order, thus giving him until December 10 to file the brief. Even if his interpretation was not the only one possible, Hooper argued, it was reasonable and his reliance on it was justified.

The full NTSB granted the motion to dismiss. NTSB Order No. EA-2511 (Mar. 30, 1987). After observing that the ALJ's notice also referred to the Board's Rules of Practice, which make the appeal timetable clear, the Board held there was "no justification in the law judge's decision or in our rules for counsel's asserted error." The Board reaffirmed its policy, to which it had "in recent years ... consistently adhered," that "in the absence of good cause a late filed brief will result in dismissal." *Id.* at 3.

Before us, the NTSB responded to Hooper's petition for review by citing numerous cases in which it had applied this good cause standard. However, in a laudable display of candor, the Board in its brief acknowledged:

> Although the full Board generally follows its policy of dismissal where no good cause is shown for an untimely brief or extension request, the NTSB General Counsel appears to have departed from this policy on occasion and accepted untimely briefs without a finding of good cause. (These actions are not reflected in the full Board's published decisions.)

Brief for Respondents at 12 (footnote omitted).[1]

We have made it clear an agency's failure to enforce such a procedural rule uniformly is arbitrary and capricious. *See Green Country Mobilephone, Inc. v. FCC,* 765 F.2d 235, 237–39 (D.C.Cir.1985) (failure to grant waiver for late filings arbitrary and capricious where it is indistinguishable from a case granting a waiver); *see also Reuters Ltd. v. FCC,* 781 F.2d 946 (D.C. Cir.1986). "[O]nce an agency agrees to allow exceptions to a rule, it must provide a rational explanation if it later refuses to allow exceptions in cases that appear similar." *Green Country,* 765 F.2d at 237. Here, the NTSB is unable even to describe the circumstances in which exceptions were made, and the irregular character of its procedures is accentuated by the failure to publish the grants of waivers—suggesting only the cognoscenti may benefit from the exceptions. Because it is impossible for us to determine that the instant case is not similar to earlier ones in which exceptions were granted, we grant the petition for review and return the case to the NTSB for further proceedings.[2]

---

1. The NTSB has delegated to its General Counsel the authority to "[a]pprove or disapprove in safety enforcement proceedings, for good cause shown, requests for changes in procedural requirements subsequent to the initial decision." 49 C.F.R. § 800.24(b).

2. We do not, of course, hold that the NTSB has no power to enforce its rule as strictly as it pleases; the law requires only uniformity or a reasoned, principled justification for non-uniformity. *Green Country,* 765 F.2d at 239. Nor does this holding mean that all late-tendered filings must be accepted by the NTSB for some unspecified period of time because of the past actions of the General Counsel. The Board will, however, have to make some public pronouncement through an appropriate policymaking channel indicating that this discrepancy has been eliminated and that a rule of general application is in place.