PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

INOVA ALEXANDRIA HOSPITAL,
           *Plaintiff-Appellant,*

v.

DONNA E. SHALALA, Secretary,
Department of Health and Human
Services,
           *Defendant-Appellee.*

No. 00-1409

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-99-1102-A)

Argued: November 2, 2000

Decided: March 26, 2001

Before WILLIAMS and MICHAEL, Circuit Judges, and
Joseph F. ANDERSON, Jr., Chief United States District Judge
for the District of South Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Michael wrote the opinion, in
which Judge Williams and Chief Judge Anderson joined.

---

## COUNSEL

**ARGUED:** Edith Sophia Marshall, POWERS, PYLES, SUTTER &
VERVILLE, P.C., Washington, D.C., for Appellant. Janet Rehnquist,
Assistant United States Attorney, Alexandria, Virginia, for Appellee.

**ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

## OPINION

MICHAEL, Circuit Judge:

Inova Alexandria Hospital (the Hospital) contested its Medicare reimbursement for 1994 by filing an administrative appeal with the Provider Reimbursement Review Board (the Board) of the U.S. Department of Health and Human Services (HHS). The Board dismissed the appeal because the Hospital failed to file certain papers on time. The Hospital then challenged the Board's dismissal by suing the Secretary of HHS in federal court. The district court reviewed the Board's dismissal decision on the merits and granted summary judgment to HHS. We are presented with two questions: (1) whether the Hospital is entitled to judicial review and (2) whether, if judicial review is available, the Board acted properly in dismissing the Hospital's administrative appeal. We conclude that the Hospital is entitled to judicial review, but after considering the merits we affirm the award of summary judgment to HHS.

### I.

The Hospital is a Medicare provider. To be reimbursed for the services it furnishes to Medicare beneficiaries, the Hospital submits an annual cost report to its fiscal intermediary (or paying agent), Trigon Blue Cross and Blue Shield (Trigon). As a fiscal intermediary Trigon acts under contract with the Secretary of HHS. *See* 42 U.S.C. § 1395h. This case arises out of Trigon's disallowance in August 1996 of a portion (about $290,000) of the Hospital's requested reimbursement for fiscal year 1994. In January 1997 the Hospital filed a timely appeal of Trigon's determination to the Board. (The appeal document was a request for a hearing before the Board. *See* 42 U.S.C. § 1395*oo*.) In July 1997 the Board sent a letter to the Hospital, with a copy to Trigon, setting forth a schedule for submission of position papers. The letter said that preliminary position papers were due by November 1, 1998, and final papers by February 1, 1999. In Septem-

ber 1997 the Board sent a reminder letter to the Hospital that repeated the briefing schedule and warned that failure to meet the deadlines would result in dismissal of the appeal.

The Hospital failed to file either a preliminary or a final position paper. The failure was due to internal confusion at the Hospital in the wake of a corporate acquisition, specifically, Inova Health System's acquisition of the Hospital, which occurred after the appeal was filed but before the position papers were due. David Eunpu, a hospital employee, was initially responsible for handling the appeal. After the acquisition many of Eunpu's duties changed, and he mistakenly assumed that someone else would be handling the appeal. Because the appeal remained Eunpu's responsibility, the Hospital failed to file the position papers. Because of this failure, the Board dismissed the Hospital's appeal. The Hospital requested that the Board reinstate the appeal on the grounds of innocent and inadvertent mistake, but the Board denied the request. The Board concluded that "administrative oversight is not a sufficient basis upon which to reinstate an appeal." The Hospital next requested that the Health Care Financing Administration (HCFA) review the Board's decision denying the appeal, but the HCFA declined to undertake any review.

The Hospital thereafter sued HHS in federal court, claiming that the Board's actions in dismissing and not reinstating the Hospital's administrative appeal were arbitrary and capricious, violated the Hospital's right to a hearing under the Medicare Act, and violated the Due Process Clause. The Hospital also asserted that the Board's rule regarding the dismissal of appeals is invalid because it was not promulgated under the APA's notice and comment procedure. HHS moved to dismiss for lack of jurisdiction, asserting that the Board's actions were discretionary and not subject to judicial review. In the alternative, HHS moved for summary judgment on the ground that the Board's actions were justified in the circumstances. As we read the district court's order, the court assumed jurisdiction and then granted summary judgment to HHS, concluding that the Board acted properly when it dismissed and refused to reinstate the Hospital's administrative appeal. The Hospital appeals the district court's order.

## II.

We turn first to the matter of jurisdiction. In district court and in its brief to us, HHS argued that the Hospital was not entitled to judi-

cial review of the Board's decisions relating to the dismissal of the Hospital's administrative appeal. At oral argument, however, HHS conceded that judicial review is available and urged us to affirm on the merits. Although there is presently no objection to our jurisdiction, we nonetheless believe that the issue should be examined. *See Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 299 (4th Cir. 2000) ("We are duty-bound to clarify our subject matter jurisdiction even if the parties do not [pursue] it as an issue.").

As the Supreme Court has instructed, "We begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). Indeed, the APA provides for review "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). This case involves the second exception, whether the agency's action is committed to its discretion by law. This exception to judicial review is a "very narrow one," reserved for "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotation marks omitted). There is no law to apply if "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). In other words, judicial review is foreclosed if the "agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent." *Strickland v. Morton*, 519 F.2d 467, 470 (9th Cir. 1975). However, even if the underlying statute does not include meaningful (or manageable) standards, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *CC Distribs., Inc. v. United States*, 883 F.2d 146, 154 (D.C. Cir. 1989) (internal quotation marks omitted).

Here, the Medicare Act provides the Board with broad authority to develop procedures for provider appeal hearings. Specifically, the Act grants to the Board "full power and authority to make rules and establish procedures, not inconsistent with the provisions of this subchapter or regulations of the Secretary, which are necessary or appropriate to carry out the provisions of this section." 42 U.S.C. § 1395*oo*(e).

Under this authority the Board adopted the following rule: "If [the provider] fail[s] to submit [a] final position paper to the Board by the due date, the Board may dismiss the appeal." *See* Provider Reimbursement Manual (PRM) § 2921.4E (1993).[1]

The question for us is whether there are manageable standards for judicial review of the Hospital's claims that the Board erred in dismissing the appeal for failure to file timely position papers. For starters, we clearly have manageable standards to review the Board's action in connection with three of the Hospital's claims: (1) that the Board violated the Due Process Clause, (2) that the Board violated the Hospital's right to a hearing under the Medicare Act, and (3) that the Board's dismissal rule is invalid because it was not promulgated under the APA's notice and comment procedure. We may review the Hospital's due process claim because it is well settled that even if agency action is committed to its discretion by law, a court may still determine whether the action is constitutional. *See, e.g.*, *Padula v. Webster*, 822 F.2d 97, 101 (D.C. Cir. 1987); *Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981). This is because the Due Process Clause provides a manageable standard that allows for review. We may also review the Hospital's Medicare Act claim because the Act does not allow the Board to adopt rules or procedures that are inconsistent with the provisions of the Act. *See* 42 U.S.C. § 1395*oo*(e). Even if the Board purports to give itself complete discretion by rule to dismiss an appeal for failure to file a position paper, the Board's power to dismiss is nevertheless circumscribed by the provisions of the Medicare Act. Because the Hospital's Medicare Act claim turns on the scope of the Act, there is a judicially manageable standard for analyzing this claim. Likewise, we may review the Hospital's claim that the Board's rule regarding dismissal of appeals should have been promulgated under the APA's notice and comment procedure. Because this claim turns on whether the APA requires such a rule to be promulgated under the notice and comment procedure, *see* 5 U.S.C. § 553(b)(A), the APA provides the statutory standard for our analysis.

---

[1] This rule was repealed after the Board's decision in this case. Currently, the Provider Reimbursement Manual does not contain any rules regarding the late submission of position papers.

It is a closer question whether we have the power to review the Hospital's claim that the Board acted arbitrarily and capriciously. For judicial review to be appropriate, there must be a manageable standard in either the statute or the Board's rule by which we may judge whether the Board's actions were arbitrary and capricious. Without deciding whether the statute supplies such a standard, we conclude that the Board's rule supplies a "meaningful standard against which to judge the [Board's] exercise of discretion." *Chaney*, 470 U.S. at 830. The Board's rule states, "If [the provider] fail[s] to submit [a] final position paper to the Board by the due date, the Board may dismiss the appeal." PRM § 2921.4E. As we will explain, this rule should not be read as reserving to the Board absolute and unfettered discretion to dismiss an appeal. Rather, it should be read as allowing the Board to dismiss an appeal only if a provider cannot show excusable neglect.

We interpret the Board's rule in this manner for several reasons. First, the decision to dismiss an appeal is not the kind of decision that is ordinarily committed exclusively to agency discretion by law. "Agency actions are more likely to be committed to agency discretion when they involve factual disputes, particularly those of a politically sensitive nature." *Bd. of Trs. v. Sullivan*, 965 F.2d 558, 562 (7th Cir. 1992). The decision to dismiss an administrative appeal is similar to the kind of dismissal decisions that courts routinely review for error. *See, e.g.*, Fed. R. Bankr. P. 8001(a) (dismissal for failure to file a document); Fed. R. Civ. P. 37 (dismissal for failure to comply with discovery order); Fed. R. Civ. P. 41(b) (dismissal for failure to prosecute). Second, there is no affirmative evidence that the Board intended to insulate its decisions to dismiss appeals from judicial review. Indeed, HHS conceded at oral argument that we have jurisdiction to review the Board's action. Third, we are hesitant to interpret the Board's rule as precluding judicial review in light of the substantial interests at stake in the provider reimbursement arena. These interests are served by a provider appeals process that is fair and evenhanded. If we were to interpret the Board's rule as precluding review, the Board could, subject to the minimum constraints of due process, enforce the rule in a manner that is quite imperious.

We recognize that the language of the rule — "the Board *may* dismiss" — suggests that the Board intended to exercise discretion in

dismissing appeals. However, language allowing for discretion does not create unlimited discretion. "[T]he mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994); *cf. Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985) ("Even when there are no clear statutory guidelines, courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal."). Thus, courts routinely conclude that judicial review is available notwithstanding statutory language that seemingly allows for unlimited discretion. *See, e.g.*, *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1399 (D.C. Cir. 1995) ("[The] [B]oard . . . may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice."); *Beno*, 30 F.3d at 1062 ("The Secretary may waive compliance . . . as the case may be, to the extent and for the period he finds necessary to enable [a state] to carry out an [experimental] project."). In the end, we are satisfied that the Board did not intend to reserve to itself unlimited discretion to dismiss appeals for the failure to file timely position papers.

Again, we read the Board's rule as allowing dismissal only if the provider cannot show excusable neglect for its failure to file a timely position paper. Interpreting the Board's rule in this manner effectively balances two competing concerns: the Board's interest in efficiency and the provider's interest in fair treatment. The Board's interest in the efficient management of its docket is supported by its ability to dismiss the appeals of providers who miss deadlines. Providers, on the other hand, have an interest in having their appeals heard and in receiving fair treatment in the process. The rule thus allows the Board to dismiss appeals, but only if the provider lacks a justifiable excuse for its failure to file.

The Board's discretion is limited by the excusable neglect standard. Excusable neglect is a manageable standard that makes judicial review possible. *Cf. Dickson*, 68 F.3d at 1403 (holding that "in the interest of justice" is a judicially manageable standard); *W. Med. Enters., Inc. v. Heckler*, 783 F.2d 1376, 1381 (9th Cir. 1986) (holding that the "standard of 'good cause' is not so broad that there 'is no law to apply'"). Accordingly, we may review the Hospital's claim that the Board acted in an arbitrary and capricious manner in dismissing the appeal.

In sum, there are judicially manageable standards for reviewing each of the Hospital's claims. As a result, there is no bar to judicial review because none of the Hospital's claims are "committed to agency discretion by law." 5 U.S.C. § 701(a).

### III.

We proceed, therefore, to consideration of the district court's grant of summary judgment to HHS. The district court concluded that the Board's "actions in dismissing the [Hospital's] appeal were taken in accordance with its established procedures and statutory authority." The dismissal, the court said, "was due to [the Hospital's] negligent failure to proceed within the very reasonable procedural process provided." No material facts are in dispute, and we review the grant of summary judgment de novo. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998).

### A.

The first of the Hospital's four claims is that the Board's dismissal of its appeal violated the provisions of the Medicare Act that give a provider the right to a hearing to challenge a fiscal intermediary's reimbursement determinations. *See* 42 U.S.C. § 1395*oo*(a). The Hospital argues that it has been wrongfully deprived of a hearing because the statute does not expressly permit the Board to dismiss an appeal (that is, a hearing request) for failure to file a timely position paper. We disagree.

The gist of the Hospital's argument appears to be that it has an absolute right to a hearing. The Medicare Act, however, cannot be read so broadly. Rather, the right to a hearing must be read in conjunction with the statutory provision that allows the Board to establish procedures to implement the section providing for appeals (or hearings). *See* 42 U.S.C. § 1395*oo*(e). This provision surely empowers the Board to adopt rules that govern the dismissal of provider appeals. As a result, we do not read the Medicare Act as affording providers an unqualified right to a hearing. Of course, it would be a violation of the Medicare Act if the Board adopted procedures that unduly burdened the right to a hearing. But the Act is not offended by a rule that allows for dismissal when position papers are not filed on time.

Indeed, many agencies have rules that provide for the dismissal of a party's case when it has unreasonably failed to comply with the agency's procedural rules. *See, e.g.*, *Hooper v. Nat'l Transp. Safety Bd.*, 841 F.2d 1150, 1151 (D.C. Cir. 1988) (discussing NTSB's authority to dismiss appeals under board rule for failure to file timely briefs); *Colantuoni v. Macomber*, 807 F. Supp. 835, 838 (D.D.C. 1992) (upholding agency's dismissal of complaint for failure to file requested papers). In sum, a provider's statutory right to a hearing is not unduly burdened by a rule allowing dismissal for failure to file a timely position paper.

### B.

Second, the Hospital claims that even if the Medicare Act allows for a dismissal rule dealing with the failure to file papers on appeal, the Board was required to promulgate the rule under the APA's notice and comment procedure. This is not the case. "[R]ules of agency organization, procedure, or practice" are exempt from the notice and comment provisions of the APA. 5 U.S.C. § 553(b)(A). A rule fits within this exemption if it does not "'alter the rights or interests of parties.'" *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)). A rule that simply prescribes "the manner in which the parties present themselves or their viewpoints to the agency" does not alter the underlying rights or interests of the parties. *Id.* (quoting *Batterton*, 648 F.2d at 707).

The D.C. Circuit case of *JEM Broad. Co. v. FCC* shows why the Board's appeal dismissal rule is exempt from notice and comment. In *JEM* the plaintiff challenged an FCC rule that prohibited an applicant from amending its license application after submission. The rule allowed the FCC to reject incomplete submissions, and the plaintiff argued that the rule should have been promulgated under the APA's notice and comment procedure. The D.C. Circuit disagreed, concluding that the rule fell within the "agency organization, procedure, or practice" exception. The "critical fact," according to the court, was that the rule did not alter the "substantive standards" by which the FCC evaluated license applications. *Id.* at 327. Like the FCC in *JEM*, the Board here adopted a rule that does not alter the substantive standards by which it reviews provider claims. Rather, it adopted a proce-

dural rule for handling appeals. As a result, the Board was not required to promulgate its rule under the APA's notice and comment procedure.

## C.

Third, the Hospital claims that the Board was arbitrary and capricious in dismissing the appeal. *See* 5 U.S.C. § 706(2)(A) (providing that a reviewing court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Again, we disagree. "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). First off, the agency must provide an adequate explanation for its actions, and the explanation must show a "rational connection between the facts found and the choice made." *Id.* (internal quotation marks omitted). The required explanation must be articulated by the agency at the time of its action; neither we nor the agency may supply the explanation on appeal. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Am. Trucking Ass'ns v. Fed. Highway Admin.*, 51 F.3d 405, 411 (4th Cir. 1995). In reviewing the adequacy of the agency's explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted). The explanation, however, does not have to be a "model of analytic precision." *Dickson*, 68 F.3d at 1404. Rather, we will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974).

The Hospital challenges the timing as well as the adequacy of the Board's explanation for the dismissal of the appeal. The Hospital complains that the Board did not issue its explanation until the Hospital applied for reinstatement, which was after the Board had already dismissed the appeal. Normally, an agency must provide its explanation at the time of the agency action. *See Chenery Corp.*, 318 U.S. at 87. In this case the Board considered the merits of whether dismissal was warranted at the time the Hospital applied for reinstatement

rather than at the time of dismissal.[2] The Board gave adequate notice to the Hospital that it would dismiss the appeal if the Hospital failed to file position papers on a timely basis. When the Hospital did fail to file, the Board simply dismissed the appeal. At that time, of course, the Board had no knowledge as to why the Hospital missed the filing deadline. However, when the Hospital applied for reinstatement, the Board considered the merits of whether dismissal was warranted. In these circumstances, even though the Hospital did not receive the Board's explanation for dismissal until the decision to deny reinstatement, there was no prejudice to the Hospital. In other words, the timing of the Board's explanation was reasonable.

The Hospital argues that the Board's statement of explanation was inadequate because it was not based on "a consideration of the relevant factors." *State Farm*, 463 U.S. at 43. The Board, however, gave adequate consideration to whether the Hospital could show excusable neglect for its failure to file timely position papers. The Board's decision began with a discussion of the circumstances that led to the Hospital's failure to file its papers on time. The Board then concluded that simple "administrative oversight" was not a sufficient excuse. The Board stressed that "[w]hen the Hospital was purchased, someone [in authority] should have clarified who was responsible for this appeal and notified the Board as to whom to send correspondence." Finally, the Board distinguished one of its prior decisions, cited by the Hospital, in which an appeal had been reinstated because of the death of the provider's representative. It is evident from the Board's explanation that it amply considered the Hospital's proffered excuse. The Hospital nevertheless argues that the Board should have considered whether a sanction less onerous than dismissal might have been appropriate. As a general rule, the consideration of whether a lesser sanction might be adequate should be a step in the path to the ultimate decision that dismissal is a fair sanction for a particular litigant. But this does not mean that the Board's explanation had to include express consideration of possible alternatives to its decision. *See State Farm*, 463 U.S.

---

[2]The Board's authority to reinstate an appeal is broad. At the time of the Hospital's appeal the Provider Reimbursement Manual provided, "The Board may, at its discretion, reinstate a dismissed request for hearing on its own motion or on the request of a party." PRM § 2924.4D (1993).

at 51 ("[A]n agency [need not] consider all policy alternatives in reaching [a] decision."). The Board's explanation here, which is fairly comprehensive, demonstrates that the Board gave adequate consideration to the relevant factor of whether the Hospital could show excusable neglect. Nothing more is required.

The Hospital also argues that the Board committed a "clear error in judgment" in dismissing the appeal. This occurs "only if the error is so clear as to deprive the agency's decision of a rational basis." *Wawszkiewicz v. Dep't of Treasury*, 670 F.2d 296, 301 (D.C. Cir. 1981) (internal quotation omitted). The Hospital argues that the Board irrationally concluded that administrative oversight is not a valid excuse. We disagree. Because the Hospital's failure to file timely position papers was due to circumstances entirely within its own control, the Board had a rational basis for its decision. *Cf. W. Med. Enters.*, 783 F.2d at 1381 (upholding agency's determination that administrative neglect does not excuse a party's late filing of a notice of appeal). The Hospital also argues that the Board acted irrationally because it has not enforced the dismissal rule consistently from case to case. The Hospital claims that the Board has excused similar lapses in other appeals. Specifically, the Hospital claims that in other cases the Board has determined that dismissal for failure to file a timely position paper is proper only if the provider intended to abandon its appeal. However, the one case cited by the Hospital is from a period when the Board's rule specified that dismissal was only warranted if the provider intended to abandon its appeal. That was not the rule in place while the Hospital's appeal was pending. In short, the Hospital has given us no reason to conclude that the Board has been inconsistent in enforcing its dismissal rule. Therefore, it was not a clear error in judgment to dismiss the Hospital's appeal as a result of its neglect.

The Board provided an adequate explanation for its actions. It considered whether the Hospital could show excusable neglect, and it rationally concluded that the Hospital's excuse was inadequate. As a result, we hold that the Board's actions were not arbitrary and capricious.

IV.

Fourth, the Hospital claims that its due process rights were violated because it did not have the opportunity for a hearing to challenge the

fiscal intermediary's determination. However, just as the Medicare Act does not provide an unqualified right to a hearing, neither does the Due Process Clause provide such a right. Agency proceedings and court cases are routinely dismissed for failure to comply with procedural rules. *See, e.g.*, Fed. R. Bankr. P. 8001(a) (dismissal for failure to file a document); Fed. R. Civ. P. 37 (allowing dismissal for failure to comply with discovery order); Fed. R. Civ. P. 41(b) (dismissal for failure to prosecute); *Hooper*, 841 F.2d at 1151 (discussing NTSB's authority to dismiss appeals under Board rule for failure to file timely briefs); *Colantuoni*, 807 F. Supp. at 837 (upholding agency's dismissal of complaint for failure to file requested papers). The Hospital does not contend that it did not have an adequate opportunity to argue to the Board that dismissal was unwarranted. Therefore, the Hospital's due process rights were not violated by the dismissal.

V.

In conclusion, the Hospital is entitled to judicial review of the Board's actions in dismissing the Hospital's administrative appeal. However, because the Board's dismissal of the Hospital's appeal was appropriate in the circumstances, the district court's award of summary judgment to HHS is affirmed.

*AFFIRMED*